**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-02688-CMA-BNB

FLOYD'S 99 HOLDINGS, LLC,

      Plaintiff,

v.

JUDE'S BARBERSHOP, INC., et al.,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

---

In this trademark infringement dispute, Plaintiff Floyd's 99 Holdings, LLC

("Plaintiff" or "Floyd's") brings claims under the Lanham Act, 15 U.S.C. § 1125, and

the Trademark Act of 1946, 15 U.S.C. § 1114, as well as common law claims of unfair

competition and trademark infringement.  (Doc. # 1 at 6-7.)  The matter currently before

the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and

Improper Venue.  (Doc. # 24.)

## I.  BACKGROUND

### A.  INTRODUCTION

Floyd's is a limited liability company and owner and franchisor of barbershops,

with its principal place of business in Colorado.  (Doc. # 1, ¶¶ 1, 5.)  It utilizes federally

registered trademarks, including a trademark of its unique interior design – also known

as its "trade dress"[1] ("Trade Dress").  (Doc. # 28, ¶¶ 1, 3, 5; Doc. # 1-1.)  Plaintiff's

trademark for its Trade Dress was filed on October 28, 2005, and the United States

Patent and Trademark Office issued the registration of the Trade Dress on July 15,

2008.  (Doc. # 28, ¶ 5; Doc. # 1-1 at 2.)  Sometime in 2005, Defendant Thomas Martin

traveled to Colorado and entered one of Plaintiff's barbershops.[2]  (Doc. # 28, ¶¶ 6-7.)

Martin was photographed sitting in a barbershop chair, and the photograph ("the

Photograph") also captured some aspects of Plaintiff's Trade Dress.  (*Id.*; Doc. # 1-2.)

Thereafter, Martin returned to Michigan where, over time, Defendants opened at least

23 "Jude's Barbershops."  (Doc. # 28, ¶ 8.)  Additionally, Defendants used the

Photograph in one of their advertisements.[3]  (Doc. # 1-2.)

On September 29, 2005, Plaintiff sent a written demand that Defendants cease

and desist their allegedly wrongful use of Plaintiff's Trade Dress and informed

Defendants of Plaintiff's intent to expand nationwide.  (*Id*, ¶ 13.)  On August 3, 2006,

Plaintiff notified Defendants of its intent to enter the Michigan market specifically, and

on October 2, 2011, Plaintiff entered into a franchise agreement, under which a

---

[1]  "Trade dress" refers to a product's "overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques."  *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002).  Here, Plaintiff's registered Trade Dress includes "vapor lock lights in metal cages, pendant lighting with exposed bulbs, mechanic's toolboxes, stainless steel countertops with cut-ins and cut-outs, a vertical wall sign, and a display wall for displaying music themed posters."  (Doc. # 1, ¶ 26.)

[2]  Plaintiff alleges in its Complaint that Martin is Defendants' "agent" (Doc. # 1, ¶ 2), and Martin's affidavit indicates that he is the President of Jude's Barbershops (Doc. # 29-1, ¶ 2).

[3]  There is evidence that Defendants utilized Plaintiff's Trade Dress in other ways, such as in the interior design of Defendants' stores.  For purposes of this Order, because the Court draws all reasonable inferences in Plaintiff's favor, the Court assumes, but does not decide, that Defendants committed actions that could plausibly constitute trademark infringement.  (*See* Doc. # 1, ¶¶ 32-34; Doc. # 1-2; Doc. # 1-3.)

franchisor would be able to eventually operate a Floyd's barbershop in Michigan.  (*Id*, ¶¶ 14-15.)

## B.    ADDITIONAL JURISDICTIONAL FACTS

Defendant Martin is a resident of the state of Michigan, and the Defendant limited liability companies and corporations are registered or incorporated in, and have their principal place of business in, Michigan.  (Doc. #1, ¶¶ 6-19.)  Defendants have never provided any services, sold any products, nor conducted any business in the state of Colorado.[4]  (Doc. # 24 at 6; Doc. # 24-1, ¶¶ 6-9.)  However, Plaintiff alleges that two somewhat related contacts with the state of Colorado suffice to confer personal jurisdiction over Defendants in this case: (1) the Defendants' injury and damage to Plaintiff in Colorado, resulting from Defendants' purported infringement of Plaintiff's Trade Dress in the interior design of Defendants' barbershops; and (2) Martin's taking, and subsequent use, of the Photograph of Plaintiff's Trade Dress.  (Doc. # 28 at 10.)

## II. <u>ANALYSIS</u>

## A.    STANDARD OF REVIEW:  RULE 12(b)(2) MOTION TO DISMISS

Plaintiff bears the burden of establishing the Court's personal jurisdiction over Defendants.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th

---

[4]  Plaintiff's Complaint alleges, in part, that the Court has jurisdiction because "Defendants transacted business in Colorado."  (Doc. #1 at ¶ 23.)  However, Plaintiff did not further substantiate this allegation. Additionally, Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (Doc. # 28), and Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss (Doc. # 47), are limited to Defendants' alleged tortious acts as grounds for jurisdiction.  Moreover, no evidence provided elsewhere, such as in the affidavits submitted to the Court, contradict Defendants' assertion that they have never conducted business in Colorado.  Accordingly, the Court does not accept Plaintiff's allegations regarding Defendants having transacted business in Colorado.

Cir. 2008) (citation omitted).  Because this case is in the preliminary stages of litigation, that burden is less stringent that it otherwise would be.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  Where, as here, a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a *prima facie* showing of personal jurisdiction.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.,* 514 F.3d 1054, 1056–57 (10th Cir. 2008).  The plaintiff may make such a showing by demonstrating, via affidavits or other written materials, facts that if true would support jurisdiction over the defendant.  *Id.*

In resolving this motion, the Court accepts as true all well-pled facts – *i.e.,* facts that are neither conclusory nor speculative – alleged in Plaintiff's complaint.  *Dudnikov,* 514 F.3d at 1070.  Additionally, Plaintiff has "the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."  *Pytlik v. Prof'l Res., Ltd.,* 887 F.2d 1371, 1376 (10th Cir. 1989).  The parties have each submitted supporting affidavits.  If the parties' affidavits conflict, the conflicts "must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Wenz,* 55 F.3d at 1505 (internal quotation marks and citation omitted).

4

**B.**     **WHETHER THE COURT HAS JURISDICTION OVER DEFENDANTS**

1.     Legal Standard: Threshold "Minimum Contacts" Analysis

Colorado's long-arm statute confers jurisdiction, in relevant part, over "any cause

of action arising from . . . [t]he commission of a tortious act within this state."  Colo. Rev.

Stat. § 13-1-124(1)(b).  Additionally, "tortious conduct in a foreign state which causes

injury in Colorado may be deemed to be an act committed in Colorado so as to satisfy

the long-arm statute."  *D & D Fuller CATV Const., Inc. v. Pace*, 780 P.2d 520, 524

(Colo. 1989).  To obtain personal jurisdiction over a nonresident defendant in a diversity

action, a plaintiff must show (1) that jurisdiction is legitimate under the laws of the forum

state, and (2) that the exercise of jurisdiction does not offend the Due Process Clause.

*Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir. 1999)

(citation omitted).  In Colorado, this two-pronged inquiry essentially collapses into one

inquiry, because "Colorado's long arm statute is coextensive with constitutional

limitations imposed by the due process clause."  *Grynberg v. Ivanhoe Energy, Inc.,* 666

F. Supp. 2d 1218, 1229 (D. Colo. 2009) (internal quotation marks and citation omitted).

Thus, "'if jurisdiction is consistent with the due process clause, Colorado's long arm

statute authorizes jurisdiction over a nonresident defendant.'"  *Id.* (quoting *Benton v.*

*Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004)); *see also Archangel Diamond*

*Corp. v. Lukoil,* 123 P.3d 1187, 1193 (Colo. 2005) (same).  Therefore, the Court asks

whether the exercise of personal jurisdiction over Defendants comports with due

process.

5

This is a two-step inquiry.  First, the Court examines "whether the non-resident defendant has 'minimum contacts' with the forum state."  *Melea, Ltd. v. Jawer SA,* 511 F.3d 1060, 1065 (10th Cir. 2007) (quoting *TH Agriculture & Nutrition, LLC v. Ace European Grp. Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007)).  Second, the Court considers "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,' that is, whether the exercise of jurisdiction is 'reasonable' under the circumstances."  *Id.*[5]

To have sufficient minimum contacts for "specific" personal jurisdiction,[6] the out-of-state defendant must have (i) purposefully directed activities at forum residents, and (ii) the litigation must result from alleged injuries that arise out of those forum-related activities.  *Dudnikov,* 514 F.3d at 1071 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Found. for Knowledge in Dev. v. Interactive Design,* 234 P.3d 673, 678 (Colo. 2010).  The touchstone of the minimum contacts analysis is "whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Olsen v. Mapes*, 139 Fed. Appx. 54, 57 (10th Cir. 2005) (unpublished) (quoting *World-Wide Volkswagen Corp. v.*

---

[5]  Because the Court determines that Plaintiff has not made its *prima facie* showing under step one (*i.e.*, it cannot demonstrate that Defendants had sufficient minimum contacts with the forum state), the Court need not analyze the "fair play and substantial justice" factors involved in the second step.

[6]  The Court need not discuss whether there was "general" personal jurisdiction because the Plaintiff has not alleged that Defendants had "continuous and systematic contacts" with Colorado sufficient to permit the Court to exercise such jurisdiction.  *See Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455-56 (10th Cir. 1996); *see also Dudnikov,* 514 F.3d at 1078-79 (discussing the distinction between general and specific personal jurisdiction).  Defendants' limited contacts with Colorado are, indeed, insufficient to confer general jurisdiction.

*Woodson*, 444 U.S. 286, 297 (1980)). The aim of the "'purposeful direction' doctrine has been said by the Supreme Court to [be to] ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (*quoting Burger King*, 471 U.S. at 475). Additionally, "the question of whether a non-resident defendant has the requisite minimum contacts with the forum state to establish *in personam* jurisdiction must be decided on the particular facts of each case." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004).

In *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), the Supreme Court articulated what is now known as the "*Calder* effects test." The Court held that, where a defendant intentionally engages in tortious actions outside the forum state, and her actions are expressly directed at causing a harmful effect within that state, a sufficient nexus exists between the defendant and the state so as to satisfy due process and constitute "purposeful direction" under the "minimum contacts" analysis. *Id.*; *see also D & D Fuller*, 780 P.2d at 524 (describing and applying the *Calder* test). The Tenth Circuit has refined the *Calder* test to three elements, explaining that a defendant has "purposefully directed" its activities at Colorado or its residents when the defendant has (1) taken intentional tortious action, (2) that was expressly aimed at Colorado, (3) with the knowledge that the brunt of the injury from the action would be felt in Colorado. *Dudnikov*, 514 F.3d at 1071; *see also Impact Prods*, 341 F. Supp. 2d at 1190 (same). Further, the Tenth Circuit has taken a relatively "restrictive" approach when analyzing

7

whether a defendant expressly aimed his activities at the forum state, explaining that the "express aiming" requirement looks at "where was the 'focal point'" of the defendant's intentional action, and has held that "the forum state itself must be the 'focal point of the tort,'" *Dudnikov,* 514 F.3d at 1075 & n.9 (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995)).

Indeed, the mere fact that an out-of-state defendant has committed a business tort that causes economic injury to a forum resident does not necessarily establish that the defendant engaged in the constitutionally required minimum contacts with the forum state. *Far W. Capital*, 46 F.3d at 1077-80.  Instead, the plaintiff must show that there was "something more" by way of "minimum contacts" than the mere foreseeability of economic injury; "[t]hat 'something more' is the requirement that the defendant have 'expressly aimed' his activities at the forum state such that the forum is the 'focal point' of the tort and the injury." *Allison v. Wise*, 621 F. Supp. 2d 1114, 1120 (D. Colo. 2007) (*citing Far W. Capital,* 46 F.3d at 1078); *see also Impact Prods.,* 341 F. Supp. 2d at 1191 (same); *Dudnikov,* 514 F.3d at 1077 (same); *Regional Airline Mgt. Sys., Inc. v. Airports USA, Inc.*, No. 06-cv-01758, 2007 WL 1059012, at *5 (D. Colo. Apr. 4, 2007) (unpublished) (same).  The Tenth Circuit has cautioned that "those courts finding personal jurisdiction based upon an intentional tort analysis have not created a per se rule that an allegation of an intentional tort creates personal jurisdiction.  Instead, they have emphasized that the defendant had additional contacts with the forum." *Far W. Capital*, 46 F.3d at 1078; *see also Impact Prods., Inc.*, 341 F. Supp. 2d at 1191 (quoting

8

*IMO Indus., Inc. v. KiekertAG,* 155 F.3d 254, 265 (3d Cir. 1998) ("*Calder* did not carve out a special intentional tort exception to the traditional jurisdiction analysis, so that a plaintiff could always sue in his or her home state.")).

    2.    <u>Plaintiff Cannot Establish that Defendants "Purposefully Directed" Their Conduct at the State of Colorado</u>

Plaintiff has failed to allege facts that Defendants had such substantive, intentional, and/or purposeful contacts with the State of Colorado that the Court's exercise of personal jurisdiction would meet the minimum contacts requirements of the Due Process Clause; therefore, Plaintiff fails to present a *prima facie* case for personal jurisdiction.  Defendants' two alleged contacts with the state – Defendants' acts of alleged trademark infringement, and Martin's taking of the Photograph – are addressed, in turn, below.

    a)    *Defendants' Alleged Trademark Infringement*[7]

Trademark infringement is considered an economic tort for the purposes of Colorado's long-arm statute.  *Nestle Prepared Foods Co. v. Pocket Foods Corp*., No. 04-cv-02533, 2007 WL 1058550, at *3 (D. Colo. Apr. 5, 2007) (unpublished). Plaintiff has adequately alleged that Defendants took intentionally tortious action and

---

[7]   As previously indicated, for the purposes of this Order, the Court accepts as true all well-pled facts in Plaintiff's complaint.  *Dudnikov,* 514 F.3d at 1070.  Accordingly, the Court assumes, but does not decide, that the Defendants acted intentionally, and that they committed trademark infringement, because the Plaintiff has adequately alleged facts that could plausibly establish such liability.  Specifically, Plaintiff alleges that Martin intended to copy and use "Floyd's 99's Trade Dress with the intent of copying same and using Floyd's 99's Trade Dress to develop Defendants' barbershops and in so doing, confuse and deceive consumers"; that Defendants used the Photograph of Plaintiff's store in an advertisement for its own stores; and that Defendants' barbershops had a very similar interior design to that of Plaintiff's Trade Dress.  (Doc. # 1, ¶¶ 30-34; Doc. # 1-2; Doc. # 1-3; Doc. # 28, ¶¶ 6-10.)

engaged in trademark infringement, and that Defendants did so with the knowledge that the brunt of the injury would be felt in Colorado. *See Dudnikov,* 514 F.3d at 107. (Doc. # 1, ¶¶ 30, 32-34; Doc. # 1-2; Doc. # 1-3; Doc. # 28, ¶¶ 6-10.) However, Plaintiff has not met its burden to support its Complaint with "competent proof of the supporting [jurisdictional] facts," *Pytlik,* 887 F.2d at 1376, because Plaintiff does not include any well-pled facts that Defendants' actions in committing the tort of trademark infringement were – as is required under the *Calder* effects test – "expressly aimed" at Colorado, *see Dudnikov,* 514 F.3d at 1071. (*See generally* Doc. # 28, ¶¶ 1-17.) Rather, Plaintiff's Complaint alleges only that "Defendants engaged in such intentional infringement of Floyd's 99's Trade Dress with knowledge that it would cause injury to Floyd's 99 in Colorado."[8] (Doc. # 1, ¶ 33).

However, the out-of-state commission of trademark infringement alone – even with knowledge that the infringement would cause economic injury in Colorado – falls well short of contact "expressly aimed" at the state. "[T]hat [defendant] may have infringed on [plaintiff's] mark outside of Colorado, and did so knowing that [plaintiff] was a Colorado resident and that this infringement would have effects in Colorado, is not sufficient to demonstrate 'express aiming' at this forum." *Impact Prods., Inc.*, 341 F. Supp. 2d at 1191; *see also Reg'l Airline Mgmt. Sys., Inc.*, 2007 WL 1059012, at *5

---

[8] Plaintiff's Complaint and Brief in Opposition to Defendants' Motion to Dismiss also state that Defendants "expressly aimed" conduct at the State of Colorado by taking the Photograph in Colorado "in order to misappropriate the Trade Dress and use it for Defendants' financial gain." (Doc. #1, ¶¶ 30-31; Doc. # 28 at 10). This argument is discussed, and ultimately rejected, below.

(same); *Burger King*, 471 U.S. at 474 (holding mere foreseeability of non-forum resident causing injury in forum state not sufficient for exercise of personal jurisdiction); *Allison*, 621 F. Supp. 2d at 1121 ("[T]he . . . [c]omplaint evidences nothing more than that the economic impact of [defendant's] alleged copyright infringement is felt by plaintiff here in Colorado.  Such a circumstance is based on the mere fortuity that plaintiff happens to reside here, and is patently insufficient to permit the assumption of personal jurisdiction over [defendant] in this forum."); *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.,* 115 F. Supp. 2d 1250, 1255 (D. Colo. 2000) (holding that loss of profits sustained by Colorado resident as a result of tortious conduct of nonresident in another state did not constitute injury so as to subject nonresident to jurisdiction under the long-arm statute), *aff'd*, 16 Fed. Appx. 959, 2001 WL 912796 (10th Cir. 2001) (unpublished); *GCI 1985-1 Ltd. v. Murray Properties P'ship,* 770 F. Supp. 585, 590 (D. Colo. 1991) (dismissing claims against a nonresident defendant for lack of personal jurisdiction where the alleged loss of anticipated profits injured the plaintiff in Colorado "only as a result of the fortuitous circumstance that [the plaintiff] maintained its headquarters in Colorado"); *Amax Potash Corp. v. Trans-Resources, Inc.,* 817 P.2d 598, 600 (Colo. App. 1991) ("when both the tortious conduct and the injury occur in another state, the fact that plaintiff resides in Colorado and experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court") (citing *McAvoy v. Dist. Court,* 757 P.2d 633 (Colo. 1988)); *Gognat v. Ellsworth*, 224 P.3d 1039, 1053 (Colo. App. 2009) (same).

11

Instead, as already mentioned, Plaintiff must allege "something more" than mere foreseeable economic injury in the forum state to demonstrate that Defendants had sufficient minimum contacts, and that "something more" must be that Defendants "undertook intentional actions that were expressly aimed" at Colorado, such that the forum state was the "focal point" of Defendants' actions. *Dudnikov,* 514 F.3d at 1077; *see also Reg'l Airline Mgmt. Sys.,* 2007 WL 1059012, at *5 ("Plaintiff "must present 'something more' than the injuries [he] allegedly suffered as a result of the out-of-forum infringement.")  Here, the only other alleged contact with Colorado that could constitute "something more" was Defendant Martin's visit to one of Plaintiff's barbershops and his taking the Photograph of himself in a barbershop chair.

> b)      *The Defendants' Photograph*

Taking a photograph in a public business on a single occasion does not constitute sufficient "minimum contacts" with the State of Colorado to allow this Court to exercise personal jurisdiction over the photographer.  First, for sufficient minimum contacts to exist, (i) Defendants must have purposefully directed activities at forum residents **and** (ii) the litigation must result from alleged injuries that arise out of those activities. *Dudnikov,* 514 F.3d at 1071.  As explained above, in order to establish "purposeful direction" under the *Calder* test, Plaintiff must show that Defendants' actions (in committing the alleged tort) were "expressly aimed at the forum state," and that the state was the "focal point" of the actions. *Id.* at 1075, 1077.  The Photograph may arguably meet the second part of the minimum contacts test, insofar as Plaintiff pleads

12

facts indicating that the injury of Defendants' alleged trademark infringement "arose out of," at least in part, Defendants' actions in taking the Photograph (because the Photograph was used in an advertisement and served as a kind of "blueprint" for copying Plaintiff's Trade Dress).[9]  However, Plaintiff cannot meet the first part of that test – that is, it cannot show the act of taking the Photograph was "purposefully directed" (and, accordingly, "expressly aimed") at forum residents.  For example, Plaintiff alleges no facts indicating that the advertisement in which the Photograph appeared was circulated in Colorado, or that Jude's existence (through the Photograph or the advertisement) was known to Colorado residents.  *See Allison*, 621 F. Supp. 2d at 1120-21 (internal citation omitted) (finding no "express aiming" or "purposeful direction," because there were no allegations that defendant's website "announce[d] the fact that plaintiff is located in or in any way connected to Colorado.  The mere fact that plaintiff holds copyright registrations in the website is not sufficient to support the conclusion that [defendant] purposefully directed his activities to this forum.")  Indeed, after Martin took the Photograph, no later contact was made between Defendants, the

---

[9]   The Tenth Circuit has not yet decided whether "but-for" or "proximate" causation should be the standard guiding the "arising out of" inquiry.  *Dudnikov*, 514 F.3d at 1079; *see also Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1161 (10th Cir. 2010) ("Although we have rejected the substantial-connection approach outright, we have not expressly "pick[ed] sides" (i.e., exclusively made an election) between the proximate-cause and the but-for-causation approaches.")  Here, the Photograph would appear to satisfy "but-for" causation, as it was arguably an "event in the causal chain leading to the plaintiff's injury."  *Dudnikov*, 514 F.3d at 1078.  But whether it was a "proximate cause," which is significantly more restrictive and "examine[s] whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim," *id.*, is a closer question.  In any event, because Plaintiff fails to adequately allege that the Photograph was "expressly aimed" at the forum, this issue is rendered non-dispositive.

Photograph, and the State of Colorado.  Put differently, if the State of Colorado was the

"target," Defendants' action in taking the Photograph did not hit the target – much less

the "focal point" of it.  *See Dudnikov,* 514 F.3d at 1077.

The instant case is similar to *Schwarzenegger v. Fred Martin Motor Co.*, 374

F.3d 797 (9th Cir. 2004), *cited with approval in Impact Prods.,* 341 F. Supp. 2d at

1190, in which an Ohio car dealer used Arnold Schwarzenegger's photograph in an

advertisement without permission.  Schwarzenegger sued in California, and the Ninth

Circuit declined to find personal jurisdiction, because:

> The [defendant's] intentional act – the creation and publication of the
> Advertisement [using a copyrighted photograph] – was expressly aimed
> at Ohio rather than California.  The purpose of the Advertisement was to
> entice Ohioans to buy or lease cars from [defendant] . . . .  The Advertise-
> ment was never circulated in California, and [defendant] had no reason to
> believe that any Californians would see it and pay a visit to the dealership
> . . . .  It may be true that [defendant's] intentional act eventually caused
> harm to Schwarzenegger in California, and [defendant] may have known
> that Schwarzenegger lived in California. But this does not confer
> jurisdiction, for [defendant's] express aim was local. We therefore
> conclude that the Advertisement was not expressly aimed at California.

*Id.* at 807.  Here, too, Defendants' aim – in building and running barbershops in

Michigan (for Michigan customers), and advertising in Michigan (for Michigan residents)

– was purely local.  Defendants were not reaching back into Colorado in any meaningful

way.  *Compare Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)

(Defendant's advertisements using photographs without permission appeared "in

boating magazines circulated in New Jersey and in at least one brochure that was sent

directly to a potential customer in New Jersey.  Intentionally and directly transmitting the

14

misappropriated property that Appellees initially obtained in New Jersey back into

New Jersey is a very strong contact between them and the State.")

Further, taking a photograph of a public business is not, itself, tortious.[10]  Instead,

Defendants had to take significant additional action – including actually constructing

Jude's Barbershops – before Plaintiff, in Colorado, could have been injured in tort.

Trademark infringement actions turn on whether customers are likely to be confused,

mistaken, or deceived by the use of a trademarked product.  15 U.S.C. §§ 1114(1);

1125(a)-(b).  Any alleged confusion, mistake, or deception could not have occurred

when Martin took the Photograph; rather, they could only have occurred later, in

---

[10]   Plaintiff does not cite, nor is the Court aware of, any cases showing that the taking of a photograph in a place of business constitutes a tort.  "Although our Supreme Court has said that the term, 'tortious act,' is to be liberally construed [under the long-arm statute] to carry out the intent of the legislature, it cannot be so liberally construed as to create a tort."  *In re People in Interest of D. R. B.*, 30 Colo. App. 603, 606 (1972).  However, Plaintiff cites two cases in support of the proposition that taking the Photograph was a wrongful act that could subject Defendants to personal jurisdiction.  First, Plaintiff points to *Ultra-Images LLC v. Franclemont*, No. 05-60538, 2007 WL 81832, at *5 (S.D. Fla. Jan 8, 2007) (unpublished), but that case is distinguishable on two grounds: (1) it involved an already-existent, copyrighted photograph that was taken from the forum state and used without permission whereas, here, Martin was taking his own (obviously uncopyrighted) photograph; and (2) the defendant in *Ultra-Images* was essentially conducting business in the forum state: the court noted that "[d]efendants availed themselves of the privilege of conducting activities – purchasing photographs from a Florida photographer – within Florida. By hiring a Florida resident to buy photographs sold in Florida for [d]efendants' use, it is entirely reasonable to conclude that [d]efendants should have anticipated being haled into a Florida court."  *Id.*  Defendants here conducted no such business activity.

Plaintiff also relies on *Miller Yacht Sales, Inc.*, 384 F.3d at 97.  While one of the contacts in that case is similar to Miller's photograph here – the defendants in *Miller Yacht* took a plaintiff's brochure and floorplans out of the forum state and used them in one of their own advertisements – the Third Circuit emphasized that the defendant's advertisements appeared "in boating magazines circulated in New Jersey and in at least one brochure that was sent directly to a potential customer in New Jersey.  Intentionally and directly transmitting the misappropriated property that [a]ppellees initially obtained in New Jersey back into New Jersey is a very strong contact between them and the State."  *Id.*  By contrast, in this case there are no allegations that the advertisement using the Photograph was circulated in Colorado or sent to any customers in Colorado.

Michigan, because Defendants decided to **use** the Photograph later, in Michigan, to inform its own barbershop's designs and advertisements.  *See Vandermee v. Dist. Court*, 164 Colo. 117, 122 (1967) (holding that an event does not become a "tortious act" until it causes injury or damage within the forum regardless of where the event took place); *Wenz v. Memery Crystal,* 55 F.3d 1503, 1507 (10th Cir. 1995) (holding that there was no jurisdiction in part because "the alleged wrongful conduct – the tortious disbursal [of the Colorado plaintiff's account] – occurred in London, not Colorado.  Therefore, we conclude that [plaintiff] has failed to allege that the defendants engaged in any tortious conduct in Colorado.").

Lastly, that the Photograph was taken in Colorado – the same state where Plaintiff's principal place of business is located – was merely fortuitous, *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475), the kind of "contact" that the "minimum contacts" test is supposed to guard against.  The Photograph very well could have been taken in any of the ten other states where Floyd's franchises are located (Doc. # 1, ¶ 1), or from the Plaintiff's website in another state, which indicates that where the Photograph was taken is primarily a matter of happenstance.  *See GCI 1985-1 LTD.,* 770 F. Supp. at 589-90 (holding that where plaintiff alleged economic injury resulting from defendant's tortious conduct in North Carolina, court held that "the lost revenue . . . injured GCI in Colorado only as a result of the fortuitous circumstance that GCI maintained its headquarters in Colorado," and concluded personal jurisdiction in Colorado was not proper).

16

For the reasons provided above, the Court finds that Defendants have not had adequate "minimum contacts" with the state of Colorado for the exercise of *in personam* jurisdiction to be proper here.[11]

Finally, the Court considers whether venue transfer would be appropriate.  The federal transfer statute, 28 U.S.C. § 1631, provides that if a federal court determines that it lacks jurisdiction over a civil action, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed."  28 U.S.C. § 1631; *see also In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008).  Even though "§ 1631 contain[s] the word 'shall,' . . . the phrase 'if it is in the interest of justice' . . . grant[s] the [transferor] court discretion in making a decision to transfer an action or instead to dismiss the action without prejudice."  *Cline*, 531 F.3d at 1251 (first alteration in original).  Factors relevant to the interest-of-justice determination include "whether the claims would be time barred if filed anew in the proper forum, whether the claims alleged are likely to have merit, and whether the claims were filed in good faith or if . . . it was clear at the time of filing that the court lacked the requisite jurisdiction."  *Id.*  Plaintiff did not request transfer in the event of dismissal due to lack of jurisdiction, and the current record discloses no reason to believe that the case would now be time-barred if Plaintiff refiled it in Michigan.  *See* Doc. # 28 at 15 (discussing how Plaintiff's claims are not time-barred, and alleging that they arose as of October 11, 2011); *see also Ford Motor Co.*

---

[11]   Because the Court concludes that it lacks jurisdiction over this matter, it need not analyze whether the state of Colorado would represent a proper venue and, accordingly, denies that portion of Defendants' motion as moot.

*v. Catalanotte*, 342 F.3d 543, 550 (6th Cir. 2003) (internal quotation omitted) (The "Lanham Act does not contain a statute of limitations. In determining when a plaintiff's suit should be barred under the Act, courts have consistently used principles of laches as developed by courts of equity.")  Accordingly, the Court declines to exercise its discretion to transfer the case.

### III.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' Motion to Dismiss for Lack of Jurisdiction and Improper Venue be GRANTED in part as to the lack of personal jurisdiction, DENIED AS MOOT IN PART as to whether Colorado would be a proper venue, and DENIED in part as to Defendants' request to transfer venue.  It is

FURTHER ORDERED that the remaining motions pending in this case are DENIED AS MOOT.  It is

FURTHER ORDERED that, although each party shall bear its own attorneys' fees, Defendants shall have their costs by the filing of a Bill of Costs with the Clerk of the Court within fourteen days of the entry of judgment.  It is

FURTHER ORDERED that this case be DISMISSED WITHOUT PREJUDICE.

DATED:  September   28  , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

18